UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RALPH E. LIGHT,                          )
                                         )
              Plaintiff,                 )
                                         )
v.                                       )          No. 3:11-CV-618
                                         )          (PHILLIPS/SHIRLEY)
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Brief in Support [Docs. 12 and 13] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 14 and 15]. Plaintiff Ralph E. Light ("Plaintiff") seeks judicial

review of the decision by Administrative Law Judge ("ALJ"), the final decision of the Defendant

Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On March 10, 2009, the Plaintiff filed an application for a period of disability, disability

insurance benefits, and/or supplemental security income, claiming a period of disability, which

began on December 6, 2008. [Tr. 137-47]. After his application was initially denied and denied

again upon reconsideration, the Plaintiff requested a hearing. [Tr. 96]. On September 2, 2010, a

hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 31-62]. On November 10,

2010, the ALJ found that the Plaintiff was not disabled. [Tr. 12-25]. The Appeals Council denied

1

the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since December 6, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairment: major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except never climbing ladders, ropes or scaffolds, but can occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. He is limited to tasks requiring only occasional peripheral acuity. Claimant is further limited to simple, routine and repetitive tasks with one to four step instructions in a low stress environment, meaning the position requires him to only occasionally make work-setting decisions. The claimant is further limited to occasional interaction with co-workers and supervisors with no contact with the general public.

6.  The claimant is capable of performing past relevant work as a laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 6, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 17-24].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability.  See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of

3

at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps.  Id.  The burden of proof shifts to the Commissioner at step five.  Id.  At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

4

support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was

supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.  See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits.  Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).


## IV.    POSITIONS OF THE PARTIES

The Plaintiff presents four specific allegations of error. First, the Plaintiff argues that he is per se disabled under the Medical Listing 12.04. [Doc. 13 at 8].  Second, the Plaintiff contends that the ALJ erred by not giving his treating psychiatrist's opinions controlling weight.  [Id. at 10].  Third, the Plaintiff states that the ALJ failed to properly evaluate his credibility. [Id. at 14].  Finally, the Plaintiff asserts that the ALJ erred by relying upon flawed vocational expert testimony. [Id. at 18].

The Commissioner responds, generally, that substantial evidence supports the ALJ's decision. [Doc. 15 at 6].  Specifically, the Commissioner argues that the Plaintiff failed to prove that he is disabled pursuant to the requirements of Medical Listing 12.04. [Id. at 7].  In addition, the Commissioner asserts that the ALJ provided good reasons for discounting the treating psychiatrist's opinions.  [Id.].  Further, the Commissioner states that the ALJ properly evaluated the Plaintiff's credibility.  [Id. at 10].  Finally, the Commissioner maintains that the ALJ relied on substantial evidence to determine that the Plaintiff could perform past relevant work as a factory laborer and that he could perform other work as well.  [Id. at 12].

## V.    ANALYSIS

The Court will address each of the Plaintiff's arguments in turn.


## A.    Medical Listing 12.04

The Plaintiff argues that he is per se disabled under Medical Listing 12.04. [Doc. 13 at 8]. He asserts that the ALJ erred by relying on his daily activities to find that he did not meet the "B" criteria.  [Id. at 9]. The Plaintiff contends, "None of the minimal activities cited by the ALJ clearly conflict with a conclusion that [the Plaintiff] would have marked limitations in maintaining concentration, persistence, or pace and in social functioning in the course of a 40-hour work week." [Id. at 10].

The Commissioner responds that the Plaintiff "failed to meet his burden of demonstrating the strict requirements of Listing § 12.04." [Doc. 15 at 7].  The Commissioner argues that the ALJ properly relied on reports from two psychologists to find that the Plaintiff did not meet the "B" criteria. [Id.].

To fulfill the criteria of Medical Listing 12.04, a claimant must fulfill the "B" criteria, which requires that the claimant demonstrate at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The ALJ found that the Plaintiff had not satisfied the "B" criteria. First, the ALJ found that the Plaintiff has mild restriction in activities of daily living. [Tr. 19]. The ALJ explained that the Plaintiff was able to "take care of personal hygiene, prepare simple meals, shop, clean, and

do laundry." [Tr. 19]. In addition, the ALJ noted that the Plaintiff testified that "he prepared frozen meals and grocery shopped once a month." [Tr. 19].

Second, the ALJ found that the Plaintiff had moderate difficulties in social functioning. [Tr. 19]. The ALJ stated that the Plaintiff socializes with friends and family and "played pool at a pool hall with friends." [Tr. 19]. The ALJ noted that the Plaintiff "played cards and attended church," although he now reports that he does not socialize much with others. [Tr. 19]. The ALJ stated that the Plaintiff reported of having difficulties getting along with others and was fired because of insubordination. [Tr. 19]. However, the ALJ noted that the Plaintiff currently washes dishes at a restaurant and "goes out every day and uses public transportation." [Tr. 19].

With regard to concentration, persistence, or pace, the ALJ found that the Plaintiff had moderate difficulties. [Tr. 19]. The ALJ explained that the Plaintiff reads the newspaper every day, but the Plaintiff reported that he does not follow written or oral instructions very well. [Tr. 19]. The ALJ noted that the Plaintiff testified that his concentration problem is not always the reason he is unable to complete tasks, but instead, the Plaintiff attributes these problems to his mood swings. [Tr. 19]. In October 2009, the Plaintiff reported that he continued to attend church every Sunday and watched television for an hour every day. [Tr. 19].

With regard to episodes of decompensating, the ALJ found that the Plaintiff has experienced one to two episodes. [Tr. 19]. The ALJ explained that on one occasion, the Plaintiff was hospitalized. [Tr. 19]. The ALJ concluded, "Because the [Plaintiff's] mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." [Tr. 19].

The Court finds that there is substantial evidence in the record to support the ALJ's conclusion. The ALJ discussed each criterion and compared it with the Plaintiff's Function Reports and his own testimony. [Tr. 19]. While the Plaintiff argues that the ALJ should have taken Dr. Javed's opinions into account, the Court finds, for the reasons discussed below, the ALJ was not required to do so. In addition, the state agency psychologist opined that while the Plaintiff displays some limitations, the Plaintiff demonstrates no marked limitations in any of the areas. [Tr. 424-41]. The consultative examiner found that the Plaintiff was "oriented to person, place, and time." [Tr. 420]. Although the Plaintiff's immediate memory was "limited," the consultative examiner found that his "mental fluency and concentration was fair." [Tr. 420]. In fact, besides Dr. Javed's opinions, there is no medical evidence in the record that suggests the Plaintiff has marked limitations in daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.

Moreover, the Plaintiff's daily activities are consistent with the ALJ's findings. On the Plaintiff's Function Report in 2009, he indicated that he prepares food daily, cleans the apartment, does the laundry, and shops for groceries. [Tr. 227]. He also described that he enjoys reading and walking, and he attends church every Sunday. [Tr. 227].[1] At the hearing, the Plaintiff's attorney stated that when the Plaintiff needed rent money, he worked for a restaurant washing dishes. [Tr. 36].

Finally, issues regarding disability are reserved to the Commissioner. See C.F.R. § 404.1527(d)(1). Accordingly, the Court finds that the Plaintiff's argument that he is per se disabled pursuant to Medical Listing 12.04 is not well-taken.

---

[1] Later, the Plaintiff testified that he had not been associated with a church since 1995. [Tr. 48].

**B.     Badr S. Javed, M.D.**

The Plaintiff argues that the ALJ erred by not giving Dr. Javed's opinions controlling weight. [Doc. 13 at 11]. In the alternative that the ALJ was not required to give Dr. Javed's opinions controlling weight, the Plaintiff asserts that the ALJ failed to give good reasons for giving the opinion little weight. [Id. at 13].

The Commissioner responds that the ALJ provided good reasons for entitling Dr. Javed's opinion little weight. [Doc. 15 at 10].

Dr. Javed saw the Plaintiff twice before he completed a psychiatric/psychological impairment questionnaire.  On the first visit, Dr. Javed noted that the Plaintiff was awake, alert, and oriented. [Tr. 497].  In addition, he reported that the Plaintiff was not overtly depressed, suicidal, or psychotic. [Tr. 497]. With regard to the Plaintiff's ability to afford his prescription, Dr. Javed wrote, "He has limited insight and sense of not being able to meet his 4 dollars a month [for medicine]." [Tr. 497].  Dr. Javed added that the Plaintiff's "smokes cost more every day." [Tr. 497]. He opined that the Plaintiff has a personality disorder and scored him a 55 on the Global Assessment of Functioning ("GAF") scale. [Tr. 497].

Subsequently, on July 17, 2009, Dr. Javed noted that the Plaintiff was well-related, non-psychotic, non-manic or mixed, and had a "good clear sensorium." [Tr. 496]. The Plaintiff reported that his Prozac helped. [Tr. 496]. Dr. Javed noted that the Plaintiff was "psychomotor slowed and dishev[e]led" but was not having any suicidal ideations. [Tr. 496].

On October 9, 2009, Dr. Javed completed a psychiatric/psychological impairment questionnaire. [Tr. 485-92]. Dr. Javed noted that the Plaintiff demonstrates marked limitations in the following areas: understanding and memory, sustained concentration and persistence, social interactions, and adaption. [Tr. 488-90]. Dr. Javed indicated that the Plaintiff has depression and

psychosis. [Tr. 486]. He opined that the Plaintiff was unable to work, but wrote "N/A" when asked to identify any laboratory and diagnostic test results supporting his conclusions. [Tr. 486, 490]. Finally, Dr. Javed estimated that the Plaintiff was a 50 to 55 on the GAF scale. [Tr. 485].

Dr. Javed saw the Plaintiff two more times before he drafted the narrative report on May 17, 2010. On November 13, 2009, Dr. Javed noted that the Plaintiff stated that he was taking his medicine and "doing well." [Tr. 494]. The Plaintiff told Dr. Javed that he was "waiting on disability" and that he spends his time "reading and chatting online" in the library. [Tr. 494]. He reported sleeping and eating well and had no complaints of side effects from his prescription. [Tr. 494]. Dr. Javed noted that the Plaintiff was oriented, well-related, clear in sensorium, and not manic or mixed. [Tr. 494]. In addition, Dr. Javed reported that the Plaintiff had "good language production," his thoughts were coherent, and he was not suicidal or homicidal. [Tr. 494].

Six months later on May 10, 2010, Dr. Javed saw the Plaintiff again. [Tr. 527]. The Plaintiff reported that he was "angry at the world and SSDI for not doing its job." [Tr. 527]. Dr. Javed noted that he was oriented, well-related, and non-psychotic. [Tr. 527]. Dr. Javed also noted that the Plaintiff was not manic or mixed, he had a "good clear sensorium," his speech was well-produced, and his thoughts were coherent. [Tr. 527]. In his treatment plans, Dr. Javed changed the Plaintiff's Invega to a nighttime dosage due to the Plaintiff's reports of having hallucinations. [Tr. 527]. In addition, Dr. Javed noted that the Plaintiff should take his prescriptions regularly to avoid decompensation. [Tr. 527]. He indicated that the Plaintiff had stopped taking his prescription for a month and had decompensated. [Tr. 527].

On May 17, 2010, Dr. Javed completed a narrative report. [Tr. 518]. Dr. Javed reported that the Plaintiff had been prescribed Prozac and Invega. [Tr. 519]. He noted that the Plaintiff's

response to these medications were "[l]ess than exemplary—[c]ontinued to have mood and hallucinations." [Tr. 519]. He concluded:

> Limitations on daily functioning.
> - Mr. Light has poor social and work related functioning-directly related to his diagnoses as above.
> - His condition has lasted longer than 12 months-and reasonably expected to last many more years to come.
>
> Prognosis: Based on previous history, lack of response to medications and limited social/functional progress. The prognosis is poor for work/social function.

[Tr. 519].

Dr. Javed saw the Plaintiff three more times before the ALJ wrote the decision. On July 19, 2010, Dr. Javed reported that the Plaintiff continued to have more paranoia, anger, and trust issues. [Tr. 526]. He noted that the Plaintiff was oriented and well-related and that he spent his time in the library chatting online. [Tr. 526]. In addition, Dr. Javed opined that the Plaintiff endorsed symptoms of psychosis. [Tr. 526].

On August 23, 2010, Dr. Javed noted that the Plaintiff reported he was using marijuana to "counteract the side effects" of his medication. [Tr. 534]. Dr. Javed told the Plaintiff that the symptoms he was having were not side effects but just regular phenomenon. [Tr. 534]. The Plaintiff reported that his auditory hallucinations were "better." [Tr. 534]. Dr. Javed noted that the Plaintiff was oriented; well-related; not manic, mixed, or depressed; and his thoughts were coherent. [Tr. 534]. In addition, Dr. Javed indicated that the Plaintiff had a "good clear sensorium," demonstrated no abnormal movements, and had no suicidal or homicidal ideations. [Tr. 534].

On October 18, 2010, Dr. Javed noted that the Plaintiff's mood was depressed and that he displayed some anxiety. [Tr. 533]. He reported that the Plaintiff had some psychomotor slowing

but no "extreme/disabling symptoms." [Tr. 533]. Dr. Javed stated that he had "reasonable concentration and [was] participating well in session and treatment planning." [Tr. 533].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

The ALJ discussed Dr. Javed's opinions in length. [Tr. 21, 23]. After summarizing Dr. Javed's opinions, the ALJ stated that they were not entitled to controlling weight. [Tr. 23]. The ALJ noted that Dr. Javed only saw the Plaintiff a couples times before he completed the October

9, 2009 questionnaire. [Tr. 23]. In addition, the ALJ stated that when Dr. Javed completed a report on May 17, 2010, he had not seen the Plaintiff in six months. [Tr. 23].[2] The ALJ continued that the consultative examination and treatment notes suggest that the Plaintiff was alert and cooperative with no memory deficits. [Tr. 23]. She noted that the medical evidence shows that the Plaintiff received conservative care for his mental health problems. [Tr. 23]. She also stated that Dr. Javed's statements regarding the Plaintiff's mental abilities were in conflict with the Plaintiff's testimony and daily activities. [Tr. 23]. Finally, the ALJ noted that Dr. Javed's opinions were inconsistent with the opinions of the Disability Determination Service ("DDS").

As noted above, a treating physician's opinion as to the nature and severity of an impairment is entitled to controlling evidence when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." The Court finds that the ALJ's conclusion that Dr. Javed's opinions are inconsistent with the record is supported by substantial evidence. The evidence in the record, including the Plaintiff's testimony, is inconsistent with Dr. Javed's conclusions. In fact, Dr. Javed's medical notes are inconsistent with his own psychiatric/psychological impairment questionnaire and narrative report.

On the questionnaire, Dr. Javed noted that the Plaintiff demonstrates marked limitations in all areas, and in the narrative report, he wrote that the Plaintiff has "poor social and work related functioning." [Tr. 488-90, 519]. However, Dr. Javed's medical notes provide no evidence of such a restrictive assessment. During the Plaintiff's first appointment, Dr. Javed stated that the Plaintiff was not suicidal, psychotic, or overtly depressed. [Tr. 497]. At the second appointment, Dr. Javed noted that the Plaintiff was well-related, non-psychotic, not manic or mixed, and had

---

[2] Although not changing the Court's analysis, the Court recognizes that the Plaintiff did meet with Dr. Javed on May 10, 2010, seven days before Dr. Javed completed the narrative report.

"a good clear sensorium." [Tr. 496]. The Court is confused as to how these two assessments would lead Dr. Javed to conclude that the Plaintiff demonstrates marked limitations in all areas. [Tr. 488-90]. Moreover, Dr. Javed noted on the questionnaire that the Plaintiff demonstrates marked limitations in sustaining concentration and persistence but later, during an appointment, noted that the Plaintiff had "reasonable concentration." [Tr. 533].

In addition, the Plaintiff's third and fourth visits were similar to the first two visits. On the Plaintiff's third visit with Dr. Javed, the Plaintiff reported that he was "doing well" and that he spends his time in the library "reading and chatting online." [Tr. 494]. On the Plaintiff's fourth visit, although he reported that he hears voices, Dr. Javed noted that the Plaintiff was oriented, well-related, and non-psychotic. [Tr. 527]. Once again, the Court is uncertain as to how these two assessments would lead Dr. Javed to conclude on the narrative report that the Plaintiff has "poor social and work related functioning." [Tr. 519]. Although Dr. Javed opined that the Plaintiff demonstrated a "lack of response to medications," on several occasions, Dr. Javed noted that the Plaintiff reported that his medications worked well. [Tr. 494, 533].

Finally, Dr. Javed's psychiatric/psychological impairment questionnaire and narrative report are inconsistent with the state agency psychologist and the examining psychiatrist. Kirk Boyenga, Ph.D, the state agency psychologist, reviewed the Plaintiff's medical file and did not assign marked limitations in any of the categories. [Tr. 424-40]. In addition, William W. Lee, Ed.D., the consultative examiner, opined that while the Plaintiff suffered from major depression and poly substance abuse, "he did not appear to be exhibiting any significant cognitive deficits." [Tr. 421].

Based on the foregoing, the Court finds that the ALJ did not err in concluding that Dr. Javed's opinions were not entitled to controlling weight because they were inconsistent with the

evidence.

As mentioned above, when an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). In the present matter, although the ALJ did not explicitly assign how much weight was given, it is clear that the ALJ gave Dr. Javed's opinion little or no weight. While the ALJ acknowledged that Dr. Javed was the Plaintiff's treating psychiatrist, the ALJ noted that Dr. Javed only saw the Plaintiff several times before he completed the psychiatric/psychological impairment questionnaire and the narrative report.[3] Moreover, as the ALJ noted, the consultative examination and treatment notes, including Dr. Javed's own medical notes, show that the Plaintiff was alert and cooperative. The ALJ also noted that the Plaintiff received "generally conservative care for his mental problems, consisting of medications and periodic physician visits." [Tr. 23]. Finally, the ALJ explained that Dr. Javed's opinions were inconsistent with the Plaintiff's own testimony and with the opinions of DDS and the consultative examiner. [Tr. 23].

Accordingly, the Court finds that the ALJ explained the basis for affording no weight to Dr. Javed's opinions and gave good reasons for her decision.

## C. The Plaintiff's Credibility

The Plaintiff argues that the ALJ erred in evaluating his credibility. [Doc. 13 at 15]. The Plaintiff asserts that the ALJ provided an analysis that does not comport with the procedural requirement an ALJ must use to explain credibility findings. [Id.] The Plaintiff cites to a Seventh

---

[3] In fact, as the ALJ acknowledged, Dr. Javed saw the Plaintiff twice before he completed the psychiatric/psychological impairment questionnaire. In addition, Dr. Javed saw the Plaintiff only two more times before he completed the narrative report. At the time the ALJ issued the decision, Dr. Javed saw the Plaintiff a total of seven times over the course of a year and four months.

16

Circuit decision that criticizes the Social Security Administration's repeated use of "template" language in addressing a claimant's credibility:

> Reading the administrative law judge's opinion, we first stubbed our toe on a piece of opaque boilerplate near the beginning, where, after reciting [the Plaintiff's] description of her medical conditions, the opinion states: "After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

Bjornson v. Astrue, 671 F.3d 640, 644 (7th Cir. 2012). The Plaintiff argues that the regulations "instruct the ALJ to evaluate the consistency of a claimant's statements not against the adjudicators own [residual functional capacity] . . . but with the evidence of record. [Doc. 13 at 15].

The Commissioner responds that "substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling depression were not credible." [Doc. 15 at 10]. The Commissioner maintains that the ALJ considered objective medical evidence in assessing the intensity, persistence, and limiting effects of the Plaintiff's depression. [Id. at 11].

As a general rule, an ALJ's credibility determination is entitled to substantial deference. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). However, the regulations provide a non-exhaustive list of considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7)

other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); Tell v. Comm'r of Soc. Sec., No. 11-cv-15071, 2012 WL 3679138, at *11 (E.D. Mich. July 13, 2012). Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (1996); Tell, 2012 WL 3679138, at *11.

The Plaintiff is correct that in this case, the ALJ used the boilerplate language questioned by the Seventh Circuit:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

[Tr. 21]. Ultimately, the "template" language "says that all the claimant's allegations are not credible to the extent they are more severe than the [residual functional capacity]." Tell, 2012 WL 3679138, at *11. Like other courts that have decided this issue, this Court finds the "template" language to be "unhelpful." Id. However, in the present matter, while the ALJ used the "template" language, she provided additional reasons for discounting the Plaintiff's credibility pursuant to 20 C.F.R. § 404.1529(c). See Barbera v. Comm'r of Soc. Sec., No. 11-cv-13265, 2012 WL 2458284, at *14-15 (E.D. Mich. June 5, 2012) (finding that although the ALJ used the boilerplate language, the ALJ provided additional reasons for discounting the plaintiff's credibility).

The ALJ explained that the Plaintiff first alleged a vision disorder, in which he

complained of seeing halos around lights. [Tr. 21]. The ALJ noted that although the Plaintiff complains of vision problems, he testified that he watches television, reads the newspaper, and is able to read the captions on his television. [Tr. 21]. In addition, the ALJ continued, there are no medical records supporting his alleged vision disorder. [Tr. 21]. Dr. Javed also noted the Plaintiff's use of a computer and reading at the library. [Tr. 494].

With regard to the Plaintiff's alleged mental treatment, the ALJ noted that although the Plaintiff complained of mental problems since childhood, there are no records supporting this allegation. [Tr. 21]. In addition, there are no medical records supporting his alleged suicide attempts, [Tr. 21], the recency of which were discounted by the medical records, including Dr. Javed. The ALJ noted that the Plaintiff has maintained a work history up until his alleged onset disability date. [Tr. 21]. Moreover, while the Plaintiff was admitted to Good Shepard Hospital, records indicate that once he began his medications, he "was feeling pretty good with a nearly euthymic mood at discharge." [Tr. 21]. The ALJ also explained that the Plaintiff's mental status examinations demonstrated that he was "not overtly depressed and was awake, alert and oriented." [Tr. 21].

Furthermore, the ALJ noted, that while Dr. Javed reported that the Plaintiff could not afford his $4 monthly prescription, the doctor also stated that he was spending more money on cigarettes instead. [Tr. 21]. At the hearing the Plaintiff's attorney stated that when the Plaintiff needs money, he works at a restaurant washing dishes. [Tr. 22]. The ALJ stated that "he spends his time in the library using a computer to chat online," and he is able to "manage personal hygiene, prepare simple meals, make purchases, pay bills for room renting, and attend scheduled appointments." [Tr. 21]. However, the ALJ gave the Plaintiff the "benefit of doubt on impaired social skills." [Tr. 22]. Finally, there is evidence that the Plaintiff wrote bad checks and he

testified that he steals items from stores, which the ALJ noted, "speaks to [his] credibility." [Tr. 23].

Accordingly, the Court finds that the ALJ adequately explained her credibility assessment.

In the alternative, the Plaintiff argues that the ALJ's findings cannot sustain a conclusion that he is not credible. [Doc. 13 at 16]. In particular, the Plaintiff argues that the ALJ's reasons—namely, the lack of documentation of his mental health treatment, noncompliance with his medications, and his daily activities, are insufficient reasons for discounting the Plaintiff's credibility. [Id. 15-17].

The Court finds that there is substantial evidence to support the ALJ's credibility determinations. The Plaintiff correctly asserts that the Plaintiff's childhood mental illness is not an issue in this matter. However, at the hearing, the Plaintiff's attorney stated, "This has been a person who has been struggling with a major depressive disorder his entire life . . . . It's been a lifelong struggle and he doesn't seem to be getting any better." [Tr. 36]. The ALJ simply stated that there were no records documenting his alleged childhood mental illness. [Tr. 21]. This was one out of many factors the ALJ discussed and thus, harmless.

In addition, the Plaintiff asserts that he could not afford his medications and that the ALJ erred by considering his noncompliance with his prescription as a credibility factor. However, as the ALJ correctly noted, Dr. Javed reported that although the Plaintiff stated he could not afford his $4 month prescriptions, "his smokes cost more every day." [Tr. 497]. Finally, the Plaintiff's daily activities are inconsistent with his alleged mental illness. The Plaintiff's attorney stated that the Plaintiff works at a restaurant when he needs rent money, and the Plaintiff testified that he watches television every day, he is able to cook, and he shops for groceries. [Tr. 36, 42, 48, 49].

In addition, he reported that he spends his time in the library reading and using the computers. [Tr. 494].

Moreover, as the ALJ noted, the medical records are inconsistent with the Plaintiff's complaints, including most of Dr. Javed's records, which indicate that the Plaintiff is not overtly depressed. Accordingly, the Court finds that the Plaintiff's arguments regarding the ALJ's credibility assessment are not well-taken.

**D.    Vocational Expert's Testimony**

The Plaintiff argues that the ALJ did not accurately describe his limitations to the vocational expert. [Doc. 13 at 18]. The Plaintiff asserts that the ALJ should have considered the vocational expert's testimony in accordance with Dr. Javed's limitations. [Id. at 19].

The Commissioner responds that the ALJ relied on substantial evidence in the record to determine that the Plaintiff was capable of performing his past relevant work as a laborer. [Doc. 15 at 12].

At the hearing, Amy Mowery testified as the vocational expert. Ms. Mowery testified that the Plaintiff's past work included laborer (factory, landscape, lumber yard) and hardware sales clerk. [Tr. 55]. The ALJ posed a hypothetical question incorporating the residual functional capacity finding above, supra 2. [Tr. 56].  In response to the ALJ's hypothetical, Ms. Mowery confirmed that such an individual would be able to perform the Plaintiff's past relevant work as a factory laborer, along with other work, such as a janitor or cleaner and warehouse worker. [Tr. 56-57]. Ms. Mowery testified that there were a significant number of jobs available in these work areas. [Tr. 56-57].  In addition, the ALJ asked Ms. Mowery to consider Dr. Javed's opinions that the Plaintiff demonstrates marked limitations in all areas. [Tr. 58]. Ms. Mowery testified that

based upon Dr. Javed's opinions, the Plaintiff would not able to perform past relevant work or "sustain full time employment consistently." [Tr. 58].

As analyzed above, the Court finds that Dr. Javed's opinions were inconsistent with the record, and thus, the ALJ was not required to establish the Plaintiff's ability to work in accordance with his opinions. See Parks v. Soc. Sec. Admin., 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions . . . need only to incorporate those limitations which the ALJ has accepted as credible.").

Alternatively, the Plaintiff argues that the "ALJ's hypothetical question failed to properly incorporate all of the psychiatric limitations recognized by the ALJ." [Doc. 13 at 19]. Although the ALJ determined that the Plaintiff has moderate limitations in maintaining concentration, persistence, and pace, the Plaintiff asserts that the ALJ did not include that limitation in her hypothetical question to the vocational expert. [Id.].

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 517 (6th Cir. 2010). The Plaintiff argues that Ealy supports his argument.

In Ealy, the ALJ relied on the vocational expert's testimony in response to a hypothetical that stated, "[A]ssume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." Id. at 516. Earlier in the decision, however, the ALJ found that the plaintiff demonstrated moderate limitations with regard to concentration, persistence or pace and that this assessment was consistent with the psychologist's opinion. Id. at 516, n. 4. The psychologist that the ALJ agreed with concluded that the plaintiff was able to sustain attention

for "[two-hour] segments over an eight-hour day where speed was not critical." Id. at 516. The court held that the "ALJ's streamlined hypothetical omitted these speed-and pace-based restrictions completely" and that the "hypothetical posed by the ALJ should have included the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." Id. at 516.

In the present matter, the ALJ, while analyzing the Plaintiff's mental impairment under Medical Listing 12.04, found that the Plaintiff had moderate difficulties with regard to concentration, persistence, and pace. [Tr. 19]. The hypothetical posed to Ms. Mowery indicated an individual who is "limited to simple, routine and repetitive tasks with one to four step instructions in a low stress environment meaning the position requires him to only occasionally make work-setting decisions." [Tr. 20].

The present matter is different from Ealy. First, unlike Ealy, no medical opinion in the record places time restrictions on the Plaintiff's ability to concentrate. The court in Ealy specifically held that the ALJ "failed to include Ealy's time and speed restrictions." Id. at 517. Second, the ALJ not only found that the Plaintiff was capable of performing "simple" and "repetitive tasks" but added that he is only capable of performing "tasks with one to four step instructions in a low stress environment." [Tr. 20]. Finally, unlike Ealy, the medical evidence documenting the Plaintiff's disabling depression is insufficient at best.

Accordingly, this Court finds that the ALJ's hypothetical question posed to the vocational expert adequately accounted for the Plaintiff's mental impairments.

## VI.     CONCLUSION

The Court finds that the ALJ properly reviewed and weighed the evidence to determine that the Plaintiff is capable of performing medium work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[4] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 12**] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [**Doc. 14**] be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).